IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IMMANUEL UNITED CHURCH OF CHRIST | § § § | |
| VS. | § § | CASE NO. 4:17-cv-1329 |
| PHILADELPHIA INDEMNITY INSURANCE COMPANY, ENGLE MARTIN & ASSOCIATES, INC., JOHN MILLER and SUSAN SABOUNI | § § § § § | |

*ON REMOVAL FROM:*

CAUSE NO. 2017-25426

| | | |
|---|---|---|
| IMMANUEL UNITED CHURCH OF CHRIST | § § § § | IN THE DISTRICT COURT |
| VS. | § § | HARRIS COUNTY, TEXAS |
| PHILADELPHIA INDEMNITY INSURANCE COMPANY, ENGLE MARTIN & ASSOCIATES, INC., JOHN MILLER and SUSAN SABOUNI | § § § § § | 164TH JUDICIAL DISTRICT |

EXHIBIT "5"

ALL DOCUMENTS FILED IN STATE COURT

| Tab | Document Name | Filing Date |
|---|---|---|
| 1. | Plaintiff's Original Petition and Motion to Compel Mediation | 4/14/17 |
| 2. | Defendant Philadelphia Indemnity Insurance Company's Original Answer | 4/28/17 |
| 3. | Notice of Removal to Federal Court | 4/28/17 |

DOCUMENTS FILED IN STATE COURT CASE

# Exhibit 5-1

4/14/2017 11:14:48 AM
Chris Daniel - District Clerk Harris County
Envelope No. 16467837
By: Nelson Cuero
Filed: 4/14/2017 11:14:48 AM

# 2017-25426 / Court: 164

CAUSE NO. _____

| | | |
|---|---|---|
| IMMANUEL UNITED CHURCH OF CHRIST | § | IN THE DISTRICT COURT OF |
|     *Plaintiff,* | § | |
| | § | |
| | § | |
| v. | § | HARRIS COUNTY, TEXAS |
| | § | |
| PHILADELPHIA INDEMNITY INSURANCE | § | |
| COMPANY, ENGLE MARTIN & | § | |
| ASSOCIATES, INC., JOHN MILLER | § | |
| AND SUSAN SABOUNDI | § | |
|     *Defendants.* | § | _____ JUDICIAL DISTRICT |

## PLAINTIFF'S ORIGINAL PETITION
## AND MOTION TO COMPEL MEDIATION

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Immanuel United Church of Christ, hereinafter referred to as Plaintiff, complaining of Philadelphia Indemnity Insurance Company ("Philadelphia"), Engle Martin & Associates, Inc., ("EM"), John Miller ("Miller") and Susan Saboundi ("Saboundi") (hereinafter collectively referred to as "Defendants") and for cause of action would respectfully show unto this Honorable Court and Jury as follows:

### DISCOVERY CONTROL PLAN

1.     Plaintiff intends for discovery to be conducted under Level 3 of Rule 190 of the Texas Rules of Civil Procedure. This case involves complex issues and will require extensive discovery. Therefore, Plaintiff asks the court to order that discovery be conducted in accordance with a discovery control plan tailored to the particular circumstances of this suit.

### PARTIES

2.     Plaintiff is a domestic non-profit corporation.

3.      Defendant Philadelphia is a Pennsylvania insurance company engaging in the business of insurance in the State of Texas.  This Defendant may be served with process by serving: CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

4.      Defendant Engle Martin & Associates, Inc. may be served by serving its registered agent for service:  CSC-Lawyers Incorporating Service Company, 211 East 7th Street, Suite 620, Austin, Texas 78701.

5.      Defendant John Miller is an individual residing in Texas and may be served with process at the following address: One Sugar Creek Center Boulevard, Suite 440, Sugar Land, Texas 77478.

6.      Defendant Susan Saboundi is an individual residing in Pennsylvania and may be served with process at the following address:  PO Box 950, Bala Cynwyd, Pennsylvania 19004.

7.      The Clerk is requested to issue Citations.

**JURISDICTION**

8.      Plaintiff stipulates that the damages in this matter are in excess of $1,000,000, and that the damages are within the jurisdictional limits of the court.  Plaintiff contends that the determination of damages is within the sole discretion of the Judge and Jury, but makes this stipulation as required by TEX.R.CIV.P. 47.

9.      The court has jurisdiction over Defendant Philadelphia because this Defendant engages in the business of insurance in the State of Texas and Plaintiff's causes of action arise out of this Defendant's business activities in the State of Texas.

10.     The court has jurisdiction over Defendants EM, Miller and Saboundi because these Defendants engage in the business of adjusting insurance claims in the State of Texas and Plaintiff's causes of action arise out of these Defendants' business activities in the State of Texas.

## VENUE

11.    Venue is proper in Harris County, Texas, because the insured property is situated in Harris County, Texas.  TEX.CIV.PRAC.REM.CODE §15.032.

## FACTS

12.    Immanuel United Church of Christ is a non-profit religious institution serving Spring, Texas and the surrounding areas.  The chapel of Immanuel United Church of Christ is over 100 years old, tracing its roots back to July 15, 1916.  The church prides itself on inclusion, welcoming members and guests alike with the motto "no matter who you are, or where you are on life's journey, you are welcome here."

13.    In order to protect the property, Immanuel United Church of Christ purchased on insurance policy (hereinafter referred to as "the Policy"), which was issued by Defendant Philadelphia.  Plaintiff owns the insured property, which is a collection of buildings located at 26501 Border Street, Spring, Texas 77373 (hereinafter referred to as "the Property").

13.    Defendant Philadelphia sold the Policy insuring the Property to Plaintiff.  Plaintiff paid its premiums at the times required and at all times relevant to this lawsuit, maintained coverage through Philadelphia.

14.    Plaintiff experienced a storm event which caused substantial damage to the Property and constituted a covered loss under the Policy issued by Defendant Philadelphia.  The wind at the location was severe, knocking down numerous large trees, at least one of which fell on the church.  The weather event caused severe damage to the roof, as well as leaking and water damage to the interior of the church.  As a result of the weather event, Plaintiff subsequently opened a claim and Defendant Philadelphia assigned Defendants EM, Miller and Saboundi to adjust the claim.  Defendant Philadelphia assigned a date of loss of to the claim of April 26, 2016.  Defendant Philadelphia wrongfully denied Plaintiff's claim and refused to issue a full and fair payment for the

3

loss. When Plaintiff disagreed with Philadelphia's findings, the church hired a public adjuster to present the claim to Philadelphia. Rather than considering new evidence demonstrating that the claim was misevaluated, Philadelphia refused to conduct a re-inspection of the Property, standing on its denial and refusing to cooperate with Immanuel United Church of Christ.

15.     Defendant Philadelphia retained Defendant EM to perform an inspection and estimate of the cost of repairs to the Property. Defendant Miller is an employee of Defendant EM and inspected the Property on July 5, 2016. Defendants EM and Miller made numerous errors in estimating the value of Plaintiff's claim, all of which were designed to intentionally minimize and underpay the loss incurred by Plaintiff. The estimate prepared by Defendants EM and Miller was grossly undervalued and did not allow for adequate funds to cover the cost of repairs for all the covered damages sustained to the Property. Specifically, Defendants EM and Miller miscalculated the overhead and profit owed to Plaintiff, paying a mere $270.83 when, even using the erroneous numbers generated by Defendant Miller, overhead and profit should have been paid at $2,066.98. As a result of Defendant Miller's actions, Plaintiff was shorted $1,795.15. Defendant Miller also grossly underestimated the cost of repairs needed from the large trees falling on the Property, which further caused Plaintiff's claim to be wrongly denied.

16.     Defendant Miller also knowingly and intentionally omitted damage that should have been estimated. Specifically, EM and Miller retained an engineering firm by the name of ProNet. ProNet documented damage to the parsonage roof, specifically lifted shingles, and concluded that "isolated shingles at the roof of the sanctuary, parsonage and garage with fasteners pulled through are the result of wind forces…" However, Miller ignored those damages and never wrote an estimate including the damage to the parsonage. As a result of Miller's omission, Plaintiff's claim for damage to the parsonage was completely ignored and was neither accepted or denied by Philadelphia. Had Defendant Miller written the damage documented by his own engineer, Plaintiff's claim for the

parsonage would have exceeded the deductible, and Plaintiff would have been paid for the claim.  As a result of Miller intentionally ignoring the findings of the engineer he retained, Plaintiff's claim was wrongfully denied.

16.    Defendant Saboundi is an employee of Philadelphia.  Ms. Saboundi has never visited the Property, yet nevertheless was given sole authority to deny Plaintiff's claim from over a thousand miles away.  Further, Ms. Saboundi is not a licensed insurance adjuster in Texas and is not registered with the Texas Department of Insurance.  Nevertheless, Philadelphia assigned Ms. Saboundi to handle Plaintiff's claim, in spite of her not holding a Texas adjuster's license.  Ms. Saboundi's lack of qualifications became apparent on August 26, 2016 when she denied Plaintiff's claim.  In spite of experiencing a windstorm severe enough to completely destroy multiple large trees, Immanuel Church of Christ was told by Ms. Saboundi that its claim was not covered.  Specifically, Ms. Saboundi incorrectly informed the church that the damage caused by a tree falling on the property was only a minor issue, instead blaming (1) "wear and tear;" (2) "rust, corrosion, fungus, decay, deterioration, spoilage, contamination, hidden or latent defect or any quality in property that causes it to damage or destroy itself;" and (3) "insects, birds, rodents or other animals."  Contrary to Ms. Saboundi's representations, none of these caused the loss suffered by Immanuel United Church of Christ.

17.    Defendant Philadelphia failed to perform its contractual duties to adequately compensate Plaintiff under the terms of the Policy in effect during Plaintiff's loss.  Specifically, Defendant Philadelphia refused to pay the full proceeds owed under the Policy, although due demand was made for proceeds to be paid in an amount sufficient to cover the damaged property and all conditions precedent to recovery upon the Policy in question had been carried out and accomplished by Plaintiff.  Defendant Philadelphia's conduct constitutes a breach of the insurance contract between Defendant Philadelphia and Plaintiff.

18.     Defendants misrepresented to Plaintiff that the damage to the Property was not covered under the Policy, even though the damage was caused by a covered occurrence. Defendants' conduct constitutes a violation of the Texas Insurance Code, Unfair Settlement Practices. TEX.INS.CODE §541.060(a)(1).

19.     Defendants failed to make an attempt to settle Plaintiff's claim in a fair manner, although Defendants were aware of their liability to Plaintiff under the Policy. Defendants' conduct constitutes a violation of the Texas Insurance Code, Unfair Settlement Practices. TEX.INS.CODE §541.060(a)(2)(a).

20.     Defendants failed to explain to Plaintiff the reasons for their offer of an inadequate settlement. Specifically, Defendants failed to offer Plaintiff adequate compensation, without any explanation why full payment was not being made. Furthermore, Defendants did not communicate that any future settlements or payments would be forthcoming to pay for the entire loss covered under the Policy, nor did Defendants provide any explanation for the failure to adequately settle Plaintiff's claim. Defendants' conduct constitutes a violation of the Texas Insurance Code, Unfair Settlement Practices. TEX.INS.CODE §541.060(a)(3).

21.     Defendants failed to affirm or deny coverage of Plaintiff's claim within a reasonable time. Specifically, Plaintiff did not receive timely indication of acceptance or rejection, regarding the full and entire claim, in writing from Defendants. Defendants' conduct constitutes a violation of the Texas Insurance Code, Unfair Settlement Practices. TEX.INS.CODE §541.060(a)(4).

22.     Defendants refused to fully compensate Plaintiff, under the terms of the Policy, even though Defendants failed to conduct a reasonable investigation. Specifically, Defendants performed an outcome-oriented investigation of Plaintiff's claim, which resulted in a biased, unfair and inequitable evaluation of Plaintiff's claim, which resulted in a biased, unfair and inequitable

evaluation of Plaintiff's loss on the Property.  Defendants' conduct constitutes a violation of the Texas Insurance Code, Unfair Settlement Practices.  TEX.INS.CODE §541.060(a)(7).

23.     Defendant Philadelphia failed to meet its obligations under the Texas Insurance Code regarding the timely acknowledgement of Plaintiff's claim, beginning an investigation of Plaintiff's claim and requesting all information reasonably necessary to investigate Plaintiff's claim within the statutorily mandated time of receiving notice of Plaintiff's claim.  Defendant Philadelphia's conduct constitutes a violation of the Texas Insurance Code, Prompt Payment of Claims. TEX.INS.CODE §542.055.

24.     Defendant Philadelphia failed to accept or deny Plaintiff's full and entire claim within the statutorily mandated time of receiving all necessary information.  Defendant Philadelphia's conduct constitutes a violation of the Texas Insurance Code, Prompt Payment of Claims. TEX.INS.CODE §542.056.

25.     Defendant Philadelphia failed to meet its obligations under the Texas Insurance Code regarding payment of claims without delay.  Specifically, Defendant Philadelphia has delayed full payment of Plaintiff's claim longer than allowed and, to date, Plaintiff has not yet received full payment for its claim.  Defendant Philadelphia's conduct constitutes a violation of the Texas Insurance Code, Prompt Payment of Claims. TEX.INS.CODE §541.058.

26.     From and after the time Plaintiff's claim was presented to Defendant Philadelphia, the liability of Defendant Philadelphia to pay the full claim in accordance with the terms of the Policy was reasonably clear.  However, Defendant Philadelphia has refused to pay Plaintiff in full, despite there being no basis whatsoever on which a reasonable insurance company would have relied on to deny the full payment of Plaintiff's claim.  Defendant Philadelphia's conduct constitutes a breach of the common law duty of good faith and fair dealing.

27.    Defendants knowingly or recklessly made false representations, as described above, as to material facts and/or knowingly concealed material information from Plaintiff.

28.    As a result of Defendants' wrongful acts and omissions, Plaintiff was forced to retain the professional services of the law firms who are representing Plaintiff with respect to these causes of action.

### CAUSES OF ACTION AGAINST DEFENDANTS EM, MILLER AND SABOUNDI

A.    TEXAS INSURANCE CODE VIOLATIONS

29.    Defendants EM, Miller and Saboundi's conduct constitutes multiple violations of the Texas Insurance Code, Unfair Settlement Practices.  TEX.INS.CODE §541.060(a).  All violations under this article are made actionable by TEX.INS.CODE §541.151.

30.    Defendants EM, Miller and Saboundi are individually and separarely liable for their unfair and deceptive acts, irrespective of the fact they were acting on behalf of Defendant Philadelphia, because individually, they meet the definition of a "person" as defined by TEX.INS.CODE §541.002(2).   The term "person" is defined as "any individual, corporation, association, partnership, reciprocal or interinsurance exchange, Lloyds plan, fraternal benefit society, or other legal entity engaged in the business of insurance, including an agent, broker, *adjuster* or life and health insurance counselor."  TEX.INS.CODE §541.002(2) (emphasis added). (See also *Liberty Mutual Insurance Co. v. Garrison Contractors, Inc.,* 966 S.W.2d 482, 484 (Tex.1998)(holding an insurance company employee to be a "person" for the purpose of bringing a cause of action against them under the Texas Insurance Code and subjecting them to individual liability).

31.    Defendants EM, Miller and Saboundi's unfair settlement practice, as described above, of misrepresenting to Plaintiff material facts relating to the coverage at issue, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX.INS.CODE §541.060(1).

32.     Defendants EM, Miller and Saboundi's unfair settlement practice, as described above, of failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of the claim, even though liability under the Policy is reasonably clear, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance.   TEX.INS.CODE §541.060(2)(A).

33.     The unfair settlement practice of Defendants EM, Miller and Saboundi as described above, of failing to promptly provide the Plaintiff with a reasonable explanation of the basis in the Policy, in relation to the facts or applicable law, for the offer of a compromise settlement of Plaintiff's claim, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance.   TEX.INS.CODE §541.060(3).

34.     Defendants EM, Miller and Saboundi's unfair settlement practice, as described above, of failing within a reasonable time to affirm or deny coverage of the claim to Plaintiff or to submit a reservation of rights to Plaintiff, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance.   TEX.INS.CODE §541.060(4).

35.     Defendants EM, Miller and Saboundi's unfair settlement practice, as described above, of refusing to pay Plaintiff's claim without conducting a reasonable investigation, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX.INS.CODE §541.060(7).

## CAUSES OF ACTION AGAINST DEFENDANT PHILADELPHIA

36.     Defendant Philadelphia is liable to Plaintiff for intentional breach of contract, as well as intentional violations of the Texas Insurance Code and intentional breach of the common law duty of good faith and fair dealing.

A. **BREACH OF CONTRACT**

37.     Defendant Philadelphia's conduct constitutes a breach of the insurance contract made between Defendant Philadelphia and Plaintiff.

38.     Defendant Philadelphia's failure and refusal, as described above, to pay the adequate compensation it is obligated to pay under the terms of the Policy in question and under the laws of the State of Texas, constitutes a breach of Defendant Philadelphia insurance contract with Plaintiff.

B. **NONCOMPLIANCE WITH TEXAS INSURANCE CODE: UNFAIR SETTLEMENT PRACTICES**

39.     Defendant Philadelphia's conduct constitutes multiple violations of the Texas Insurance Code, Unfair Settlement Practices. TEX.INS.CODE §541.060(a). All violations under this article are made actionable by TEX.INS.CODE §541.151.

40.     Defendant Philadelphia's unfair settlement practice, as described above, of misrepresenting to Plaintiff material facts relating to the coverage at issue, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX.INS.CODE §541.060(1).

41.     Defendant Philadelphia's unfair settlement practice, as described above, of failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of the claim, even though Defendant Philadelphia's liability under the Policy was reasonably clear, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX.INS.CODE §541.060(2)(A).

42.     Defendant Philadelphia's unfair settlement practice, as described above, of failing to promptly provide Plaintiff with a reasonable explanation of the basis in the Policy, in relation to the facts or applicable law, for its offer of a compromise settlement of the claim, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX.INS.CODE §541.060(3).

10

43.     Defendant Philadelphia's unfair settlement practice, as described above, of failing within a reasonable time to affirm or deny coverage of the claim to Plaintiff or to submit a reservation of rights to Plaintiff, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX.INS.CODE §541.060(4).

44.     Defendant Philadelphia's unfair settlement practice, as described above, of refusing to pay Plaintiff's claim without conducting a reasonable investigation, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX.INS.CODE §541.060(7).

45.     Defendant Philadelphia's conduct described above compelled Plaintiff to initiate a lawsuit to recover amounts due under its policy by offering substantially less than the amount ultimately recovered.  Defendant Philadelphia refused to even offer more than its own grossly undervalued estimates despite actual damages which were much greater.  This continued failure compelled Plaintiff to file suit. TEX.INS.CODE §542.003(5).

C.     NONCOMPLIANCE WITH TEXAS INSURANCE CODE: THE PROMPT PAYMENT OF CLAIMS

46.     Defendant Philadelphia's conduct constitutes multiple violations of the Texas Insurance Code, Prompt Payment of Claims.  All violations made under this article are made actionable by TEX.INS.CODE §542.060.

47.     Defendant Philadelphia's failure to acknowledge receipt of Plaintiff's claim, commence investigation of the claim, and request from Plaintiff all items, statements, and forms that they reasonably believed would be required within the applicable time constraints, as described above, constitutes a non-prompt payment of claims and a violation of the TEX.INS.CODE §542.055.

48.     Defendant Philadelphia's failure to notify Plaintiff in writing of its acceptance or rejection of the claims within the applicable time constraints, constitutes a non-prompt payment of the claims within the applicable time constraints and a violation of the TEX.INS.CODE §542.056.

49.     Defendant Philadelphia's delay of the payment of Plaintiff's claim following its receipt of all items, statements, and forms reasonably requested and required, for longer than the amount of time provided for, as described above, constitutes a non-prompt payment of the claims. TEX.INS.CODE §542.058.

50.     Defendant Philadelphia's conduct described above compelled Plaintiff to initiate a lawsuit to recover amounts due under the policy by offering substantially less than the amount ultimately recovered.  Defendant Philadelphia refused to even offer more than its own grossly undervalued estimates despite actual damages exceeding his evaluation.  This continued failure compelled Plaintiff to file suit.  TEX.INS.CODE §542.003(5).

## D.     BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING

51.     Defendant Philadelphia's conduct constitutes a breach of the common law duty of good faith and fair dealing owed to insured in insurance contracts.

52.     Defendant Philadelphia's failure, as described above, to adequately and reasonably investigate and evaluate Plaintiff's claim, although, at that time, Defendant Philadelphia knew or should have known by the exercise of reasonable diligence that its liability was reasonable clear, constitutes a breach of the duty of good faith and fair dealing.

## KNOWLEDGE

53.     Each of the acts described above, together and singularly, was done "knowingly" as that term is used in the Texas Insurance Code and was a producing cause of Plaintiff's damages described herein.

## DAMAGES

54.     Plaintiff will show that all of the aforementioned acts, taken together or singularly, constitute the producing causes of the damages sustained by Plaintiff.

55.     For breach of contract, Plaintiff is entitled to regain the benefit of Plaintiff's bargain, which is the amount of Plaintiff's claim, together with attorney's fees.

56.     For noncompliance with the Texas Insurance Code, Unfair Settlement Practices, Plaintiff is entitled to actual damages, which include the loss of the benefits that should have been paid pursuant to the Policy, mental anguish, court costs and attorney's fees. For knowing conduct of the acts complained of, Plaintiff asks for three times Plaintiff's actual damages. TEX.INS.CODE §541.152.

57.     For noncompliance with Texas Insurance Code, Prompt Payment of Claims, Plaintiff is entitled to the amount of Plaintiff's claim, as well as eighteen (18) percent interest per annum of the amount of Plaintiff's claim as damages, together with attorney's fees. TEX.INS.CODE §542.060.

58.     For breach of the common law duty of good faith and fair dealing, Plaintiff is entitled to compensatory damages, including all forms of loss resulting from the insurer's breach of duty, such as additional costs, economic hardship, losses due to nonpayment of the amount the insurer owed, exemplary damages and damages for emotional distress.

59.     For the prosecution and collection of this claim, Plaintiff has been compelled to engage the services of the law firms whose names are subscribed to this pleading. Therefore, Plaintiff is entitled to recover a sum for the reasonable and necessary services of Plaintiff's attorneys in the preparation and trial of this action, including any appeals to the Court of Appeals and/or the Supreme Court of Texas.

## JURY DEMAND

60.     Plaintiff hereby requests that all causes of actions alleged herein be tried before a jury consisting of citizens residing in Harris County, Texas. Plaintiff hereby tenders the appropriate jury fee.

## DISCOVERY REQUESTS

61.     Pursuant to Texas Rule of Civil Procedure 194, Plaintiff requests that Defendants disclose the information or material described in Rule 194.2.

59.     Defendant Philadelphia is also requested to respond to the attached interrogatories, requests for production and requests for admissions within fifty (50) days of service

## MOTION TO COMPEL MEDIATION

62.     Pursuant to section 541.161 of the Texas Insurance Code, Plaintiff moves this Court for an order compelling the mediation of this dispute.

## XII.
## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that upon trial hereof, said Plaintiff has and recovers such sums as would reasonably and justly compensate Plaintiff in accordance with the rules of law and procedure, both as to actual damages, statutory penalties and interest, treble damages under the Texas Insurance Code and all punitive and exemplary damages as may be found. In addition, Plaintiff requests the award of attorney's fees for the trial and any appeal of this case, for all costs of Court on its behalf expended, for pre-judgment and post-judgment interest as allowed by law, and for any other and further relief, either at law or in equity, to which Plaintiff may show itself to be justly entitled.

Respectfully submitted,

**HAUN MENA, PLLC**

By:  /s/ Ryan K. Haun
    RYAN K. HAUN
    State Bar No.: 24055634
    D. DOUGLAS MENA
    State Bar No.: 24054982
    3006 Brazos Street
    Houston, Texas 77006
    (713) 781-8600 – Telephone
    (713) 781-8601 – Fax
    ryan@haunmena.com
    doug@haunmena.com

    **ATTORNEYS FOR PLAINTIFF**

# Exhibit 5-2

4/28/2017 12:02:18 PM
Chris Daniel - District Clerk Harris County
Envelope No. 16726892
By: Bristalyn Daniels
Filed: 4/28/2017 12:02:18 PM

## CAUSE NO. 2017-25426

| | | |
|---|---|---|
| **IMMANUEL UNITED CHURCH OF CHRIST,** | § § § | **IN THE DISTRICT COURT** |
| *Plaintiff,* | § § | |
| **VS.** | § § | **HARRIS COUNTY, TEXAS** |
| **PHILADELPHIA INDEMNITY INSURANCE COMPANY, ENGLE MARTIN & ASSOCIATES, INC., JOHN MILLER and SUSAN SABOUNI,** | § § § § § § | |
| *Defendants.* | § § | **164TH JUDICIAL DISTRICT** |

## PHILADELPHIA INDEMNITY INSURANCE COMPANY'S
### ORIGINAL ANSWER

TO THE HONORABLE JUDGE OF THIS COURT:

**Philadelphia Indemnity Insurance Company**, a Defendant in the above-styled and numbered cause ("Defendant"), files this Original Answer in response to Plaintiff's Original Petition, and respectfully shows the Court as follows:

### I.
### GENERAL DENIAL

As permitted by Rule 92 of the Texas Rules of Civil Procedure, Defendant enters a general denial of all the matters pled by Plaintiff, Immanuel United Church of Christ ("Plaintiff"), and requests that the Court require Plaintiff to prove all of its charges and allegations by a preponderance of the evidence as required by the Constitution and laws of the State of Texas.

---

## II.

### AFFIRMATIVE DEFENSES

By way of affirmative defense, if the same should be necessary, and as permitted by Rule 94 of the Texas Rules of Civil Procedure, Defendant asserts the following as to the claims and causes of action brought against it by Plaintiff:

1.     As to Plaintiff's claims for violation of provisions of chapter 541 of the Insurance Code and for breach of the common law duty of good faith and fair dealing, Philadelphia alleges that a *bona fide* dispute exists, precluding liability and Plaintiff's recovery of damages under these extra-contractual theories. *U.S. Fire Ins. Co. v. Williams*, 955 S.W.2d 267, 268 (Tex. 1997); *see Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 17 (Tex. 1994).

2.     Pleading further and in the alternative, Defendant states that any of Plaintiff's claims or causes based upon an alleged misrepresentation, inducement or reliance on a representation fails as a matter of law because the language of an insurance policy controls and the insured has a duty to read and be familiar with the terms of his own insurance policy. *Heritage Manor of Blaylock Props., Inc. v. Petersson*, 677 S.W.2d 689, 691 (Tex. App.—Dallas 1984, writ ref'd n.r.e.); *Howard v. Burlington Ins. Co.*, 347 S.W.3d 783, 792 (Tex. App.—Dallas 2011, no pet.); *Garrison Contractors, Inc. v. Liberty Mut. Ins. Co.*, 927 S.W.2d 296, 300 (Tex. App.— El Paso 1996) ("[A]n insured has a duty to read the policy and, failing to do so, would be charged with knowledge of the policy terms and conditions."), *aff'd*, 966 S.W.2d 482 (Tex. 1998). Further, an insured is bound to the terms of the policy

whether he reads it or not. *Howard v. Burlington Ins. Co.*, 347 S.W.3d at 792 (citing *Manion v. Security Nat'l Ins. Co.*, No. 13-01-248-CV, 2002 WL 34230861, *3 (Tex. App.—Corpus Christi Aug. 15, 2002, no pet.)); *Ruiz v. Gov't Employees Ins. Co.*, 4 S.W.3d 838, 841 (Tex. App.—El Paso 1999, no pet.).

3.     Pleading further and in the alternative, Defendant asserts that under Texas law, coverage under a policy of insurance cannot be created by waiver or estoppel. *Ulico Cas. Co. v. Allied Pilots Assn.*, 262 S.W.3d 773, 778-79 (Tex. 2008) (citing *Farmers Tex. County Mut. Ins. Co. v. Wilkinson*, 601 S.W.2d 520 (Tex. Civ. App.—Austin 1980, writ ref'd n.r.e.)).

4.     Pleading further and in the alternative, Defendant asserts that if Plaintiff's damages, if any, resulted from both covered and non-covered causes of loss, Plaintiff bears the burden of segregating the damages which resulted from covered causes of loss. *See Nat'l Union Fire Ins. of Pittsburgh, Pa. v. Puget Plastics Corp.*, 735 F.Supp.2d 650, 669 (S.D. Tex. 2010); *All Saints Catholic Church v. United Nat'l Ins. Co.*, 257 S.W.3d 800 (Tex. App.—Dallas 2008, no pet.); *Feiss v. State Farm Lloyds*, 392 F.3d 802, 807 (5th Cir. 2004).

5.     Pleading further and in the alternative, Defendant asserts the defenses of waiver and estoppel as provided under applicable law.

6.     Pleading further and in the alternative, Defendant alleges that discovery in this case may show that Plaintiff failed to mitigate its damages as required by applicable law and Plaintiff's claims and causes of action may therefore be barred in whole or in part.

---

7.      Pleading further, and in the alternative, Defendant alleges that the discovery in this case may show that Plaintiff failed to mitigate its damages as required under the terms and provisions of the policy of insurance Defendant issued to Plaintiff, and that any damages Plaintiff suffered by such failure to mitigate are therefore barred.

8.      Pleading further and in the alternative, Defendant asserts the coverage language, exclusions, limitations and definitions in the policy of insurance Defendant issued to Immanuel UCC under number PHPK1425307, including but not limited the following:

> a.  *Property Coverage Form* (PI-ULT-007 11.98), as modified by *Texas Changes* endorsement (PI-ULT-043 01.01):
>
> > **A.  Coverage**
> >
> > We will pay for direct physical "loss" to Covered Property caused by or resulting from any of the Covered Causes of Loss.
> >
> > **1.  Covered Property**
> >
> > Covered Property, as used in this Coverage Form, means the following types of property for which a Limit of Insurance is shown in the Declarations.
> >
> > > **a.  Your Business Personal Property,** and similar property of others in your care, custody or control:
> > >
> > > > (1) Located in or on the **"buildings"** described in the Declarations or within 1,000 feet of the described premises . . .
> > >
> > > **b.  "Buildings"** described in the Declarations....
> >
> > > \*   \*   \*
> >
> > **B.  Exclusions**
> >
> > See the Causes of Loss Form.
> >
> > **E.  Loss Conditions**
> >
> > The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions:

3. **Duties In The Event Of Loss Or Damage**

   a.  You must see that the following are done in the event of "loss" to Covered Property:

*   *   *

      (2)  Give us prompt notice of the "loss" or damage. Include a description of the property involved.

      (3)  As soon as possible, give us a description of how, when and where the "loss" or damage occurred.

      (4)  Take all reasonable steps to protect the Covered Property from further damage by and of the Covered Causes of Loss. If feasible, set the damaged property aside and in the best possible order for examination. Also, keep a record of your expenses for emergency and temporary repairs, for consideration in settlement of the claim. This will not increase the Limit of Insurance.

      (5)  At our request, give us complete inventories of the damaged and undamaged property. Include quantities, cost, values, and amount of "loss" claimed.

      (6)  As often as may be reasonably required, permit us to inspect the property and records proving the "loss".

           Also permit us to take samples of damaged and undamaged property for inspection, testing, and analysis, and permit us to make copies from your books and records.

      (9)  Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

      (10) Cooperate with us in the investigation or settlement of the claim.

4. **Loss Payment**

   a.  In the event of "loss" to Covered Property covered by this Coverage form, at our option, we will either:

      (1)  Pay the value of lost or damaged property;

      (2)  Pay the cost of repairing or replacing the lost or damaged property;

      (3)  Take all or any part of the property at an agreed or appraised value; or

---

(4) Repair, rebuild or replace the property with other property of like kind and quality.

**7. Valuation**

We will determine the value of Covered Property in the event of "loss" as follows:

**a.** At replacement cost (without deduction for depreciation) as of the time of "loss", except as provided in b., c., d., e., f., g., and h. below.

(1) We will not pay more for "loss" on a replacement costs basis than the least of:

(a) The Limit of Insurance applicable to the lost or damaged property;

(b) The cost to replace the lost or damaged property with other property:

(i) Of comparable material and quality; and

(ii) Used for the same purpose; or

(c) The amount you actually spend that is necessary to repair or replace the lost or damaged property.

(2) We will not pay on a replacement cost basis for any "loss".

(a) Until the lost or damaged property is actually repaired or replaced; and

(b) Unless the repairs or replacement are made as soon as reasonably possible after the "loss".

If the repairs or replacement are not made as soon as reasonably possible after the "loss", the value of the property will be actual cash value.

b. *Causes of Loss Form* )PI-ULT-008 11.98), as modified by *Limitations on Fungus, Wet Rot, Dry Rot and Bacteria* endorsement (PI-ULT-072 (10/10)):

**A. Covered Causes of Loss**

Covered Causes of Loss means Risks of Direct Physical Loss unless the "loss" is:

1. Excluded in Section B., Exclusions; or

2. Limited in Section C., Limitations;

that follow.

**B. Exclusions**

2.  We will not pay for "loss" caused by or resulting from any of the following:

d.  (1)  Wear and tear;

(2)  Rust, corrosion, decay, deterioration, spoilage, contamination, hidden or latent defect or any quality in property that causes it to damage or destroy itself.

(4)  Settling, cracking, shrinking or expansion;

3.  We will not pay for "loss" caused by or resulting from any of the following.  But if "loss" by a Covered Cause of Loss results, we will pay for that resulting "loss".

c.  Faulty, inadequate or defective:

(2)  Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

(3)  Materials used in repair, construction, renovation or remodeling; or

(4)  Maintenance.

Of part or all of any property on or off the described premises.

**C. Limitations**

1.  We will not pay for "loss" to:

c.  The interior of any "buildings", or to personal property in "buildings", caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:

(1)  The "buildings" first sustain damage by a Covered Cause of Loss to their roof or walls through which the rain, snow, ice, sand or dust enters; or

(2)  The "loss" is caused by or results from thawing of snow, sleet or ice on the "buildings".

c.  *Limitations on Fungus, Wet Rot, Dry Rot and Bacteria* endorsement (PI-ULT-072 (10/10)):

**A. Coverage**

1.  We will pay for "loss" or damage by "fungus," wet or dry rot or bacteria that is the result of fire or lightning.

2.   a.   We will also pay for loss or damage by "fungus," wet or dry rot or bacteria that is the result of one or more of the following causes that occurs during the policy period. Coverage applies only if all reasonable means were used to save and preserve the property from further damage at the time of and after that occurrence.

   (1)   A "specified cause of loss" other than fire or lightning;

   (2)   Water that backs up or overflows from a sewer, drain or sump; or

   (3)   Water under the ground surface pressing on, or flowing or seeping through:

      (a)   Foundations, walls, floors or paved surfaces;

      (b)   Basements, whether paved or not;

      (c)   Doors, windows or other openings; or

   (4)   "Flood," if the Flood Endorsement applies to the affected premises.

   b.   The term loss or damage as used in Item 2.a. means:

   (1)   Direct physical "loss" or damage to Covered Property caused by "fungus," wet or dry rot or bacteria, including the cost of removal of the "fungus," wet or dry rot or bacteria;

   (2)   The cost to tear out and replace any part of the building or other property as needed to gain access to the "fungus," wet or dry rot or bacteria; and

   (3)   The cost of testing performed after removal, repair, replacement or restoration of the damaged property is completed, provided there is a reason to believe that "fungus," wet or dry rot or bacteria are present.

3.   The amount we will pay for coverage described in 2.a. above is limited as described in B. Limits of Insurance and C. Additional Conditions – Business Income and/or Extra Expense.

**B.   Limits of Insurance**

1.   The most we will pay for all "loss" or damage for coverage described in A.1. above is the Limit of Insurance for Covered Property shown in the Declarations.

2.   a.   The most we will pay for all loss or damage for coverage described in A. 2. above is limited to $15,000:

---

        (1)  Regardless of the number of claims arising out of all occurrences which take place in a 12 month period, starting with the beginning of the present annual policy period; and

        (2)  Even if the "fungus," wet or dry rot or bacteria continues to be present or active, or recurs in a later policy period.

   b.  The $15,000 Limit of Insurance is included within, and is not in addition to, the applicable Limit of Insurance for any Covered Property.

d.  *Windstorm or Hail Percentage Deductible* endorsement (PI-ULT-018 11.98):

**COVERAGE SUMMARY**

| Premises No. | Bldg. No. | Windstorm or Hail Deductible Percentage (enter 1%, 2% or 5%) |
|---|---|---|
| 0001 | 0001 | 2% |
| 0001 | 0001 | 2% |
| 0001 | 0002 | 2% |
| 0001 | 0003 | 2% |
| 0001 | 0004 | 2% |
| 0001 | 0005 | 2% |
| 0001 | 0006 | 2% |
| 0001 | 0006 | 2% |

The Windstorm or Hail Deductible, as shown in the Schedule, applies to direct physical "loss" to Covered Property, caused by or resulting from Windstorm or Hail, regardless of any other cause or event that contributes concurrently or in any sequence to the "loss" or damage. If "loss" from a covered weather condition other than Windstorm or Hail occurs, and that "loss" would not have occurred but for the Windstorm or Hail such "loss" shall be considered to be caused by Windstorm or Hail and therefore part of the Windstorm of Hail occurrence.

With respect to Covered Property at a location identified in the Schedule, no other deductible applies to Windstorm or Hail.

The Windstorm of Hail Deductible applies whenever there is an occurrence of Windstorm or Hail.

As used in this endorsement the terms "specific insurance" and "blanket insurance" have the following meanings. Specific insurance covers each item of insurance (for example, each building or personal property in a building) under a separate Limit of Insurance. Blanket insurance covers two or more items of insurance (for example a building and personal property in that building or two

buildings) under a single Limit of Insurance. Items of insurance and corresponding Limit(s) of insurance are shown in the Declarations.

**Windstorm or Hail Deductible Clause**

**A.  All Policies**

    **1.**  A deductible is calculated separately for, and applies separately to:

        **a.**  Each building, if two or more buildings sustain loss or damage;

        **b.**  The building and to personal Property in that building, if both sustain loss or damage;

        **c.**  Personal property at each building, if personal property at two or more buildings sustains loss or damage;

        **d.**  Personal Property in the open.

    **2.**  We will not pay for "loss" until the amount of "loss" exceeds the applicable Deductible. We will then pay the amount of "loss" in excess of that Deductible up to the applicable Limit of Insurance, after any reduction required by any of the following:

        **a.**  Coinsurance Condition

        **b.**  Agreed Value Option Coverage

        **c.**  Reporting Endorsement

    **3.**  For property covered under the Coverage Extension for Newly Acquired or Constructed: When we determine the amount, if any, that we will pay for "loss", we will deduct an amount equal to a percentage of the value(s) of the property at time of "loss". The applicable percentage for Newly Acquired or Constructed Property is the highest percentage shown in the Schedule for any described premises.

    (s) to be used are those shown in the most recent Statement of Values on file with us.

*   *   *

**C.  Calculation of the Deductible - Blanket Insurance**

    **1.  Property Not Subject to Reporting Endorsement**

        When we determine the amount, if any, that we will pay for "loss", we will deduct an amount equal to 1%, 2% or 5% (as shown in the Schedule) of the value(s) of the property that has sustained "loss". The value(s) to be used are those

---

shown in the most recent Statement of Values on file with us.

e. *Cosmetic Damage to Roof Caused By Hail Endorsement*, which provides as follows:

We do not cover cosmetic loss or damage to roof coverings caused by the peril of hail.

Cosmetic loss or damage means only that damage that alters the physical appearance of the roof covering but does not result in damage that allows the penetration of water through the roof covering or does not result in the failure of the roof covering to perform its intended function, to keep out elements over an extended period of time.

We do cover hail damage to roof coverings that results in damage that will allow the penetration of water through the roof covering or that results in the failure of the roof covering to perform its intended function, to keep out elements over an extended period of time.

Roof Covering means the roofing material exposed to the weather, the underlayments applied for moisture protection, and all flashings required in the replacement of a roof covering.

f. *Commercial Property Conditions* (CP 00 90 07 88), as modified by *Texas Changes* endorsement (PI-ULT-043 01.01):

### D. LEGAL ACTION AGAINST US

No one may bring a legal action against us under this Coverage Part unless:

a. There has been full compliance with all of the terms of the Coverage Part; and

b. The action is brought within 2 years and one day after the date on which the direct physical "loss" occurred.

### H. POLICY PERIOD, COVERAGE TERRITORY

Under this Coverage Part:

1. We cover loss or damage commencing

a. During the policy period shown in the Declarations.

9.     Pleading further and in the alternative, Defendant asserts the other coverage language, exclusions, limitations, definitions and defenses reflected in the policy of insurance Defendant issued to Plaintiff.

10.    Pleading further and in the alternative, Defendant would show that Plaintiff's damages, if any, are capped by the limits reflected for such amounts alleged in the policy of insurance Defendant issued to Plaintiff.

11.    Pleading further and in the alternative, based upon Plaintiff's plea for the imposition of exemplary damages, Defendant affirmatively pleads the limitations on the recovery of punitive damages contained in Section 41.008 of the Texas Civil Practice and Remedies Code.

12.    Pleading further and in the alternative, Defendant pleads the applicability of the excessive demand doctrine, which precludes Plaintiff from recovering the fees and expenses of its attorney in this action. *See Findlay v. Cave*, 611 S.W.2d 57, 58 (Tex. 1981).

PRAYER

BASED ON THE FOREGOING, Defendant Philadelphia Indemnity Insurance Company, having fully answered, prays that upon final hearing and trial, the claims and causes of action Plaintiff Immanuel United Church of Christ has brought against such Defendant be dismissed with prejudice, that Plaintiff take nothing by its claims and causes of action, and that such Defendant obtain such other relief and further relief to which it may be justly entitled.

Respectfully submitted,

**KANE RUSSELL COLEMAN LOGAN PC**


By:_____/s/____William R. Pilat_____
        William R. Pilat
        State Bar No. 00788205
5051 Westheimer Road, 10th Floor
Houston, Texas 77056
Telephone: 713-425-7400
Facsimile: 713-425-7700
E-mail: wpilat@krcl.com


## CERTIFICATE OF SERVICE

I hereby certify that on April 28, 2017, a true and correct copy of the foregoing *Original Answer* was served upon all other counsel of record, as listed below, by filing this instrument with the electronic service provider for the Harris County District Courts:

Ryan K. Haun
D. Douglas Mena
HAUN MENA, PLLC
3006 Brazos Street
Houston, Texas 77006

_____/s/____William R. Pilat_____
        William R. Pilat

# Exhibit 5-3

CAUSE NO. 2017-25426

| | | |
|---|---|---|
| IMMANUEL UNITED CHURCH OF CHRIST, | § § § | IN THE DISTRICT COURT |
| *Plaintiff,* | § § | |
| VS. | § § | HARRIS COUNTY, TEXAS |
| PHILADELPHIA INDEMNITY INSURANCE COMPANY, ENGLE MARTIN & ASSOCIATES, INC., JOHN MILLER and SUSAN SABOUNI, | § § § § § § | |
| *Defendants.* | § § | 164TH JUDICIAL DISTRICT |

---

### DEFENDANT PHILADELPHIA INDEMNITY INSURANCE COMPANY'S NOTICE OF REMOVAL TO FEDERAL COURT

---

TO THE HONORABLE JUDGE OF THIS COURT:

PLEASE TAKE NOTICE that pursuant to federal law, **Philadelphia Indemnity Insurance Company**, a Defendant in the above-numbered and entitled cause, has filed with the Clerk of the United States District Court for the Southern District of Texas, Houston Division, a *Notice of Removal*, a copy of which is attached to and filed with this Notice as **Exhibit "A,"** and that this action is removed to the United States District Court for the Southern District of Texas for trial as of this date, April 28, 2017. This Court is respectfully requested to take no further action in this matter, unless and until such time as the action may be remanded by order of the United States District Court.

Respectfully submitted,

KANE RUSSELL COLEMAN LOGAN PC


By:_____/s/___William R. Pilat_____
     William R. Pilat
     State Bar No. 07788205
5051 Westheimer Road, 10th Floor
Houston, Texas 77056
Telephone:  713-425-7400
Facsimile:  713-425-7700
E-mail:  wpilat@krcl.com

ATTORNEY FOR DEFENDANT PHILADELPHIA
INDEMNITY INSURANCE COMPANY


## CERTIFICATE OF SERVICE

I certify that on April 28, 2017, , a true and correct copy of the foregoing *Notice of Removal to Federal Court* was forwarded to all other known counsel of record, as listed below, via e-Filing with the electronic service provider for the Harris County District Courts:

Ryan K. Haun
D. Douglas Mena
HAUN MENA, PLLC
3006 Brazos Street
Houston, Texas  77006


                    _____/s/___William R. Pilat_____
                    William R. Pilat

---

# Exhibit A

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

IMMANUEL UNITED CHURCH          §
OF CHRIST,                      §
                                §
    *Plaintiff,*              §
                                §
VS.                             §          CASE NO. 4:17-cv-1329
                                §
PHILADELPHIA INDEMNITY          §
INSURANCE COMPANY,              §
ENGLE MARTIN & ASSOCIATES,      §
INC., JOHN MILLER and           §
SUSAN SABOUNI,                  §
                                §
    *Defendants.*             §

### DEFENDANT PHILADELPHIA INDEMNITY INSURANCE COMPANY'S NOTICE OF REMOVAL

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Pursuant to 28 U.S.C. §§ 1332, 1441(b) and 1446(a), **Philadelphia Indemnity Insurance Company**, a Defendant in the above-styled case, files this Notice of Removal from the District Court of Harris County, Texas, 164th Judicial District, to the United States District Court for the Southern District of Texas, Houston Division.

#### INTRODUCTION

1.      Plaintiff is Immanuel United Church of Christ ("Plaintiff").

2.      Philadelphia Indemnity Insurance Company ("Philadelphia") is a Defendant that Plaintiff has named.

3.      Engle Martin & Associates, Inc. ("Engle Martin") is another Defendant that Plaintiff has named.

4.      John Miller is the third Defendant Plaintiff has named in this case.

5.      Susan Sabouni, incorrectly named as "Susan Saboundi", is the fourth and last Defendant Plaintiff has named in this case.

6.      Plaintiff commenced this first-party insurance case on April 14, 2017. Plaintiff has asserted causes of action against arising under Texas law against Philadelphia for allegedly breaching the insuring agreement, violating various provisions of chapters 541 and 542 of the Texas Insurance Code, and breaching the common-law duty of good faith and fair dealing. Plaintiff has sued the three other Defendants for allegedly violating various provisions of chapters 541 of the Texas Insurance Code.

7.      Philadelphia learned of Plaintiff's filing of this lawsuit in state court on April 18, 2017, four days after Plaintiff commenced the action. Philadelphia is therefore timely filing this Notice of Removal, as it is removing this action may be filed "within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3).

## VENUE IS PROPER

8.      Pursuant to 28 U.S.C. § 1441(a), this action may be removed to this Court because it is the district and division embracing Harris County, Texas, the county in which the state court action is pending.

## BASIS FOR REMOVAL

9.      This is a civil action that falls under the Court's original jurisdiction pursuant to 28 U.S.C. § 1332(a) and is one that may be removed to this Court based on diversity of citizenship in accordance with 28 U.S.C. §§ 1441 and 1446.

### A.   Complete Diversity of Citizenship Exists Between Plaintiff and All Properly Joined and Served Defendants.

10.     The "forum-defendant" rule provides that a civil action may not be removed to federal court on the basis of diversity of citizenship jurisdiction "if any of the parties in interest properly joined *and served* as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2) (emphasis added). Thus, as will be shown below, although one of the four Defendants sued by Plaintiff is an individual who is a resident of Texas, that Defendant has not been served.

11.     Plaintiff "is a non-profit religious organization serving Spring, Texas and the surrounding areas." Pl.'s Orig. Pet. ¶ 12, at 3 (included as a part of **Exhibit 5**). Philadelphia issued a policy of insurance to Plaintiff for "the insured property, which is a collection of buildings located at 26501 Border Street, Spring, Texas 77373." *Id.* ¶ 13, at 3.

12.     Philadelphia is a corporation organized and existing under the laws of the State of Pennsylvania. *See* Affidavit of Eugene Angiolillo, attached as **Exhibit 1** (attesting to the facts that Philadelphia is incorporated in and maintains its principal place of business in Pennsylvania. *See id.*

13.     Engle Martin is a corporation organized and existing under the laws of the State of Georgia. It also maintains its principal place of business in Georgia. *See* Affidavit of Donald L. Ouzts, attached as **Exhibit 2**.

14.     Defendant Susan Sabouni "is an individual residing in Pennsylvania." Pl.'s Orig. Pet. ¶ 6, at 2.

15.     Defendant John Miller is an individual residing in Texas. *See id.* At this time, however, Plaintiff has not obtained service of process upon John Miller. *See* Affidavit of John Miller, attached as **Exhibit 3**.

16.     A majority of the federal courts considering "snap removal," as Philadelphia seeks here, have held that 28 U.S.C. § 1441(b)(2) permits removal as long as no in-state defendant has been served. The majority of those courts have held that a *non-forum* defendant — such as Philadelphia, in this case — can remove prior to service of any in-state defendant. *See, e.g.*, *Regal Stone Ltd. v. Longs Drug Stores Cal., L.L.C.*, 881 F. Supp. 2d 1123, 1128-29 (N.D. Cal. 2012); *In re Diet Drugs Prods. Liab. Litig.*, 875 F. Supp. 2d 474, 477 (E.D. Pa. 2012); *Carrs v. AVCO Corp.*, Civil No. 3:11-CV-3423-L, 2012 WL 1945629, at *2 (N.D. Tex. May 30, 2012); *Watanabe v. Lankford*, 684 F. Supp. 2d 1210, 1219 (D. Haw. 2010); *North v. Precision Airmotive Corp.*, 600 F. Supp. 2d 1263, 1270 (M.D. Fla. 2009).

17.     Most courts following this majority approach permitted removal without consideration of whether the defendant removing the case had been served at the time of removal. *See, e.g.*, *Poznanovich v. AstraZeneca Pharms. LP*, Civ. No. 3:11-cv-04001, 2011 WL 6180026, at *4 (D.N.J. Dec. 12, 2011) ("The Court finds that

the language of the statute is plain, and, thus, adherence to the plain language is required."); *Robertson v Iuliano*, No. RDB-10-1319, 2011 WL 453618, at *2 (D. Md. Feb. 4, 2011) ("The majority of courts that have interpreted section 1441(b) apply the plain language of the statute to allow removal when none of the forum defendants have been served. . . . In this case, applying the plain meaning rule does not lead to absurdity or an outcome at odds with congressional intent.") (citations omitted); *Boyer v. Wyeth Pharms., Inc.*, No. 12739, 2012 WL 1449246, at *2-3 (E.D. Pa. Apr. 26, 2012) ("The pre-service removal of this action by a non-forum defendant where the forum defendant had not been served prior to removal was proper under the unambiguous language of §1441(b)."); *Hutchins v. Bayer Corp.*, No. 08-640, 2009 WL 192468, at *6 & *11 (D. Del. Jan. 23, 2009) (denying motion to remand upon finding that "[t]he language of § 1441 (b) is plain and unambiguous"). These courts found there is simply no statutory requirement that the removing defendant must first have been served with the complaint.

**B.    The Amount in Controversy Exceeds $75,000.**

18.    Plaintiff's Original Petition contains the following statement of the monetary relief Plaintiff seeks by way of this lawsuit: "Plaintiff stipulates that the damages in this matter are in excess of $1,000,000." Pl.'s Orig. Pet. ¶ 8, at 2.

19.    Plaintiff therefore seeks damages, exclusive of interest and attorney's fees, in excess of the jurisdictional minimum of $75,000.

## C.   Removal Is Appropriate Under the Court's Diversity Jurisdiction.

20.     In light of these facts, the state court claim may be removed to this Court because: (i) this action is a civil action pending within the jurisdiction of the United States District Court for the Southern District of Texas; (ii) none "of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought", 28 U.S.C. § 1441(b)(2); and (iii) the amount in controversy exceeds $75,000, exclusive of interests and costs.

### FILING OF REMOVAL PAPERS

21.     Pursuant to 28 U.S.C. § 1446(d), Philadelphia is providing written notice of the filing of this Notice of Removal to all other counsel of record. Further, Philadelphia is filing a copy of this Notice of Removal with the Clerk of the 164th Judicial District Court of Harris County, Texas, where Plaintiff commenced this action.

22.     Philadelphia is filing the following items concurrently with this Notice of Removal, or attaching them to this Notice of Removal as required by Southern District of Texas Local Rule 81: (a) a completed civil cover sheet, JS-44 (**Exhibit 4**); (b) all executed process in the case (**none**); (c) all pleadings asserting causes of action (**Exhibit 5**); (d) any orders signed by the state judge (**none**); (e) a copy of the docket sheet in the state court action (**Exhibit 6**); and (f) a list of all counsel of record (**Exhibit 7**).

## OTHER REMOVAL MATTERS

23.     The three other Defendants sued in this cause, Engle Martin & Associates, Inc., John Miller and Susan Sabouni, and have consented to the removal of this action. 28 U.S.C. § 1446(a). Consents to removal are attached as **Exhibit 8**.

## CONCLUSION

24.     Philadelphia gives notice to the Court of their removal of the above-captioned action from the 164th Judicial District Court of Harris County, Texas, and request that further proceedings be conducted in the United States District Court for the Southern District of Texas, Houston Division, as provided by law.

Dated:  April 28, 2017

Respectfully submitted,

_____ /s/   William R. Pilat_____
William R. Pilat
Texas Bar No. 00788205
S.D. Tex. No. 18655
KANE RUSSELL COLEMAN LOGAN PC
5051 Westheimer Road, 10th Floor
Houston, Texas 77056
Telephone:  713-425-7400
Facsimile:  713-425-7700
E-mail:  wpilat@krcl.com

ATTORNEY-IN-CHARGE FOR DEFENDANT
PHILADELPHIA INDEMNITY INSURANCE
COMPANY

## CERTIFICATE OF SERVICE

I hereby certify that on April 28, 2017, a true and correct copy of the foregoing pleading was forwarded to all other counsel of record, as listed below, through the electronic case filing system of the United States District Court for the Southern District of Texas:

Ryan K. Haun
D. Douglas Mena
HAUN MENA, PLLC
3006 Brazos Street
Houston, Texas 77006

/s/   William R. Pilat
William R. Pilat